IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 21-cr-00123-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

GERARDO GAMEZ-REYES,

    Defendant.

---

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

---

This matter is before the Court on Defendant Gerardo Gamez-Reyes's Motion to Dismiss the Indictment (Doc. # 17). For the following reasons, the Court denies Defendant's Motion.

### I.    BACKGROUND

On April 8, 2021, Defendant was indicted for violating 8 U.S.C. § 1326(a) by being found in the United States after having been denied admission, excluded, deported, and removed from the United States. (Doc. # 1.) The indictment also contains a notice of enhanced penalty because Defendant's "denial of admission, exclusion, deportation and removal was subsequent to a conviction for a felony offense." (*Id.*)

Defendant moves to dismiss the indictment on the basis that § 1326 violates his right to equal protection under the Fifth Amendment. *See generally* (Doc. # 17.) Specifically, Defendant contends that § 1326 is presumptively unconstitutional under

*Village of Arlington Heights v. Metropolitan Housing Development Corporation*, 429 U.S. 252 (1977) because the illegal reentry law was enacted with a discriminatory purpose and still has a disparate impact on Latinx individuals. (*Id.* at 5–6.) As such, Defendant argues that the law should be reviewed under strict scrutiny and requests an evidentiary hearing to present expert evidence. (*Id.*; Doc. # 18.) The Government argues that the Court should apply rational basis review, and, in any event, the law is constitutional and withstands strict scrutiny because Defendant fails to show invidious motive behind the 1952 enactment of the illegal reentry statute. *See generally* (Doc. # 21.) The Government further contends that an evidentiary hearing is not necessary. (*Id.* at 44–45.)

## II.     LEGAL STANDARDS

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."[1] U.S. Const. amend. V. "The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013). The equal protection analysis implicit in the Fifth Amendment "is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

If a statute does not classify people based on a suspect category, such as race, or on a quasi-suspect category, such as gender, the Court applies rational basis review.

---

[1] Because the Fifth Amendment applies to "persons," the Supreme Court has held that its protections extend to non-citizens present in the United States. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("[W]e have clearly held that the Fifth Amendment protects aliens whose presence in this country is unlawful from invidious discrimination by the Federal Government.").

*See, e.g.*, *Powers v. Harris*, 379 F.3d 1208, 1215 (10th Cir. 2004). In order for the Court to apply strict scrutiny review to a facially neutral law, Defendant must show that the legislature intended to discriminate. *Arlington Heights*, 429 U.S. at 265–66. Under *Arlington Heights*, a facially neutral statute violates equal protection if it has a racially disparate impact and a "racially discriminatory intent or purpose" served as "a motivating factor" in its enactment. *Id.*

"Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. In *Arlington Heights*, the Supreme Court established certain non-exhaustive factors to guide this "sensitive inquiry" into whether discriminatory purpose was a motivating factor in a challenged government action. *Id.* These factors include (1) the disparate impact of the official action; (2) the "historical background of the decision"; (3) the "sequence of events leading up to the challenged decision"; (4) any procedural or substantive departures; and (5) the relevant "legislative or administrative history." *Id.* at 266–68.

## III.     ANALYSIS

Defendant argues that § 1326, a provision of the Immigration and Nationality Act ("INA"), Pub. L. No. 82-414, 66 Stat. 163 (codified at 8 U.S.C. § 1, *et seq.*) was enacted with discriminatory intent. (Doc. # 17 at 2.) To support his argument, Defendant traces § 1326 back to the Undesirable Aliens Act of 1929 ("1929 Act"), which Defendant characterizes as "the first statute criminalizing illegal entry and reentry" and "the original version of 8 U.S.C. § 1326." (*Id.* at 1–2.) Defendant provides declarations from several

expert historians, including Kelly Lytle Hernandez, PhD, who describes "the criminalization of unauthorized entry" as a "racially motivated act." (Doc. # 17-1 at 2.) She defines the 1920s as the "'Tribal Twenties'—a time when the Ku Klux Klan was reborn, Jim Crow came of age, and public intellectuals preached the science of eugenics," and she contributes the 1929 Act to a rise in anti-Mexican sentiment and a corresponding increase of "Nativists" in Congress. (*Id.* at 2.) Defendant argues that the racial animus and troubling origins of the 1929 Act continued to contaminate the enactment of the INA in 1952 and that "recodification did not break the chain of discriminatory causation." (*Id.* at 23.) Defendant further contends that the 1952 INA itself was a product of discriminatory motive and provides several reasons in support, including the lack of substantive changes to § 1326 in the INA, uses of the racial slur "wetback," and the racial animus of individual members of Congress involved in the passage of the bill. (*Id.* at 34.) The Government disputes that the 1929 Act is relevant because it was repealed and replaced by the 1952 INA. (Doc. # 21 at 17.) Further, the Government argues that even if *Arlington Heights* applies, Defendant has not provided sufficient proof that the legislature that enacted § 1326 in 1952 acted with invidious motive.

Defendant also argues that § 1326 has a disparate impact on Latinx individuals. (Doc. # 17 at 10.) Among other evidence, Defendant provides data indicating that in the fifteen years after *United States v. Booker*, 543 U.S. 220 (2005), 99.45 percent of defendants charged with at least one count of violating § 1326 were from Latin America, and 96.64 percent were Hispanic. (Doc. # 17 at 11.) Further, in 2020, over 99.11

percent of those convicted of legal reentry were considered Hispanic. (*Id.*) In response, the Government argues that these numbers "are a product of geography, not discrimination" and observes that 99 percent of Border Control's encounters in 2019 occurred on the southwest border. (Doc. # 21 at 20.)

District courts around the country have addressed identical constitutional challenges to § 1326. *See, e.g.*, *United States v. Muria-Palacios*, No. 2:21-cr-00023-JAM, 2022 WL 956275 (E.D. Cal. Mar. 30, 2022); *United States v. Cortez-Mendoza*, No. 2:20-CR-131-RMP-1, 2022 WL 706917 (E.D. Wash. Mar. 8, 2022); *United States v. Munoz-De La O*, No. 2:20-CR-134-RMP-1, 2022 WL 508892 (E.D. Wash. Feb 18, 2022); *United States v. Ponce-Galvan*, No. 21-cr-02227-H-1, 2022 WL 484990 (S.D. Cal. Feb. 16, 2022); *United States v. Hernandez-Lopez*, No. H-21-440, 2022 WL 313774 (S.D. Tex. Feb. 2, 2022). Defendant points to only one court that found that § 1326 violated equal protection principles and granted a defendant's motion to dismiss the indictment. *See United States v. Carrillo-Lopez*, No. 3:20-cr-00026-MMD-WGC, 2021 WL 3667330 (D. Nev. Aug. 18, 2021). By contrast, at least five district courts within the Tenth Circuit have addressed this issue and all ruled against the defendants. *See United States v. Sifuentes-Felix*, No. 21-cr-00337-WJM, 2022 WL 293228 (D. Colo. Feb. 1, 2022); *United States v. Maurico-Morales*, No. CR-21-298-R, 2022 WL 99996 (W.D. Okla. Jan. 10, 2022); *United States v. Sanchez-Felix*, No. 21-cr-00310-PAB, 2021 WL 6125407 (D. Colo. Dec. 28, 2021), *reconsideration denied*, 2022 WL 159814 (D. Colo. Jan. 18, 2022); *United States v. Amador-Bonilla*, No. CR-21-187-C, 2021 WL

5349103 (W.D. Okla. Nov. 16, 2021); *United States v. Novondo-Ceballos*, No. 21-CR-383 RB, 2021 WL 3570229 (D.N.M. Aug. 12, 2021).

In *Sanchez-Felix*, Chief United States District Judge Philip A. Brimmer applied *Arlington Heights* and concluded that although the defendant demonstrated disparate impact, he failed to show that the enactment of § 1326 in the 1952 INA was "the product of an invidious motive" or "that racism or discriminatory views pervaded public thought." *Sanchez-Felix*, 2021 WL 6125407, at *8. Accordingly, Judge Brimmer denied the motion to dismiss the indictment without holding a hearing. *Id.* In *Sifuentes-Felix*, United States District Judge William J. Martinez adopted Judge Brimmer's reasoning in *Sanchez-Felix* and similarly denied defendant's motion to dismiss the indictment without a hearing because the defendant did not establish that § 1326 was enacted with discriminatory intent. 2022 WL 293228, at *2–3.

This Court agrees with the reasoning of Judge Brimmer, Judge Martinez, and several other courts that have applied *Arlington Heights* and found that defendants failed to establish that the INA was enacted with discriminatory intent. *See, e.g.*, *Sanchez-Felix*, 2021 WL 6125407, at *8; *Sifuentes-Felix*, 2022 WL 293228, at *3. Having carefully reviewed the briefing and relevant legal authority, the Court draws the same distinction between the 1929 Act and the 1952 INA and finds that, even assuming the passage of the 1929 Act was motivated in part by racism, Defendant has not sufficiently demonstrated that the invidious motives of the 1929 Congress carried through to the 1952 Congress. *See, e.g.*, *Ponce-Galvan*, 2022 WL 484990, at *2 ("[T]he Court rejects Defendant's argument that the legislative history of the repealed 1929 Act

6

is controlling of an analysis of § 1326 under *Arlington Heights*."); *United States v. Lucas-Hernandez*, No. 19MJ24522-LL, 2020 WL 6161150, at *2 (S.D. Cal. Oct. 21 2020) ("Defendant's *Arlington Heights* analysis of § 1325(a)(1) is fatally flawed because it relies entirely on legislative history from the 1920s, decades before § 1325(a)(1) was enacted."); *Sifuentes-Felix*, 2022 WL 293228, at *2 ("As countless other courts have found, such evidence bears little weight on Section 1326, which was officially reenacted as a felony offense in 1952 as part of the broader INA.").

Moreover, the Court finds that Defendant has failed to prove independent invidious motive on the part of Congress in 1952 in enacting the INA. The Court agrees with other courts that "[t]he use of racial slurs by one of the sponsors of the INA, both before and after the recodification of § 1326, is troubling"; however, "isolated remarks by individual congressmembers" is insufficient to show discriminatory motivation by Congress as a whole. *Munoz-De La O*, 2022 WL 508892, at *13. The legislative history for § 1326 and its subsequent amendments provided by Defendant falls short of the standard necessary to demonstrate invidious purpose. *See id.* at *14; *Sanchez-Felix*, 2021 WL 6125407, at *8 ("[D]efendant has failed to show that the historical background and events preceding the enactment of the INA were the product of invidious motive.").

After reviewing the evidence submitted by Defendant, the Court cannot conclude that § 1326 was enacted with discriminatory intent. Accordingly, the Court concludes that no evidentiary hearing is necessary to resolve the motion and denies Defendant's motion to dismiss the indictment.

## IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's Motion to Dismiss the Indictment (Doc. # 17) and Request for an Evidentiary Hearing (Doc. # 18).

DATED:  March 31, 2022

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge